```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF NEW HAMPSHIRE
```

<u>Edgar and Brenda LeClerc</u>

    v.                                                               Civil No. 10-cv-483-LM

<u>Town of Wolfeboro</u>

## **O R D E R**

In a case that has been removed from the Carroll County Superior Court, Edgar and Brenda LeClerc have sued the Town of Wolfeboro ("Town") in four counts. They challenge the Town's response to its discovery of a leak in a water pipe that leads to their house and that connects to the house of a neighbor. Specifically, plaintiffs claim that the Town violated their right to equal protection (Counts I and II) and subjected them to the intentional and negligent infliction of emotional distress (Counts III and IV), when it cut off water to them and their neighbor and then required them (but not their neighbor) to pay for repairing the leak, while providing their neighbor (but not them) with bottled water and a temporary water line. Before the court is the Town's motion to dismiss Counts I and II for failure to state a claim. Plaintiffs object. For the reasons given, defendant's motion to dismiss is granted as to

plaintiffs' federal claims, and the remaining state-law claims are remanded to the Carroll County Superior Court.

**The Legal Standard**

A motion to dismiss for "failure to state a claim upon which relief can be granted," Fed. R. Civ. P. 12(b)(6), requires the court to conduct a limited inquiry, focusing not on "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). That is, the complaint "must contain 'enough facts to raise a reasonable expectation that discovery will reveal evidence' supporting the claims." Fantini v. Salem State Coll., 557 F.3d 22, 26 (1st Cir. 2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). When considering a motion to dismiss under Rule 12(b)(6), a trial court "assume[s] the truth of all well-plead facts and give[s] the plaintiff[s] the benefit of all reasonable inferences therefrom." Vernet v. Serrano-Torres, 566 F.3d 254, 258 (1st Cir. 2009) (quoting Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d 1, 5 (1st Cir. 2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Sutliffe v. Epping Sch. Dist., 584 F.3d 314, 325 (1st Cir. 2009) (quoting Ashcroft v.

Iqbal, 129 S. Ct. 1937, 1949 (2009)). On the other hand, a Rule 12(b)(6) motion should be granted if "the facts, evaluated in [a] plaintiff-friendly manner, [do not] contain enough meat to support a reasonable expectation that an actionable claim may exist." Andrew Robinson Int'l, Inc. v. Hartford Fire Ins. Co., 547 F.3d 48, 51 (1st Cir. 2008) (citations omitted).

## Background

The relevant facts, drawn from plaintiffs' complaint, are as follows.

Plaintiffs are customers of the Wolfeboro Water Department. The Department's Rules and Regulations include the following relevant provisions:

> The term "Service Pipe" means the pipe running from the main to the customer's premises.
>
> The term "Main" means a water pipe owned, operated and maintained by the Department for the purpose of transmission and distribution of water.
>
> . . . .
>
> The Department shall install the service pipe, including the curb stop within the limits of the right of way or highway, up to a maximum of thirty (30) feet. This device connection shall remain the property of the Department and will be maintained by the Department. Only one (1) service connection will be allowed from a single connection to the main. From the curb stop to the building the service pipe shall be installed, owned and maintained solely by the customer.

Pl.'s Obj. to Def.'s Mot. to Dismiss, Ex. 1 (doc. no. 7-1), at 1-2.[1]

    The service pipe that connects plaintiffs' house to the Town's water main also connects a house across the street that Hope McDonald owns and rents out. The precise configuration of the service pipe is not alleged, but that pipe must, necessarily, include a split of some sort that allows water to flow to both houses from a single connection to the main. McDonald's house was built by the son of plaintiffs' predecessor in title. That family relationship accounts for the fact that plaintiffs' house and McDonald's house share a service pipe, an arrangement that seems to run counter to the Rules and Regulations quoted above.

    In March of 2008, the Town discovered "a water leak in the pipe servicing Plaintiffs' home." Notice of Removal, Ex. 1 (Pls.' Writ, doc. no. 1-5), at 5. Upon discovering the leak, the Town gave plaintiffs one week to repair it, or have their water shut off. The Town told plaintiffs that they were responsible for repairing the leak because their predecessor in

---

[1] While plaintiffs did not include the Rules and Regulations in their initial pleading in state court, this court may consider that document when ruling on the Town's motion to dismiss without treating that motion as one for summary judgment. See Rivera v. Centro Médico de Turabo, Inc., 575 F.3d 10, 15 (1st Cir. 2009) (explaining that when ruling on Rule 12(b)(6) motion, court may consider "official public records") (quoting Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001)).

title was responsible for maintaining the section of the service pipe where the leak occurred. Plaintiffs were never informed that they had responsibility for maintaining the service pipe.

Plaintiffs were unable to have the leak repaired within the time frame set by the Town and, as a consequence, the Town shut off their water. After doing so, the Town learned that by shutting off the water to plaintiffs' house, it also shut off the water to McDonald's house.[2] When the Town discovered that it had shut off the water to McDonald's house, it delivered bottled water to McDonald's tenants and then installed a temporary water line, at no cost to McDonald. No such services were provided to plaintiffs, who were without water until August of 2008.

Ultimately, the leak was fixed. The cost of repairs was split between plaintiffs and the Town. The Town's agreement to pay half the cost was contingent upon plaintiffs' promise to allow McDonald's house to stay connected to the shared service pipe.

Based on the foregoing, plaintiffs sued the Town. Count I is a claim that the Town violated plaintiffs' right to equal protection under the federal and state constitutions by treating them less favorably than it treated McDonald in the aftermath of

---

[2] While it is neither here nor there, the fact that the Town could not shut off the water to plaintiffs' house without also shutting off the water to McDonald's house illustrates a possible rationale for the rule that allows only a single service connection from each connection to the main.

5

the water leak. Count II is a claim brought under 42 U.S.C. § 1983. Plaintiffs further claim that the Town is liable for intentional infliction of emotional distress (Count III) and negligent infliction of emotional distress (Count IV).

## Discussion

The Town moves to dismiss, arguing that Counts I and II each fail to state a claim on which relief can be granted, and that the court should decline to exercise supplemental jurisdiction over the remaining state-law claims. The court considers each count in turn.

A. Count I

Plaintiffs do not claim that they were denied equal protection because of their membership in any of the classes traditionally protected by the Equal Protection Clause. Rather, they argue that they were unconstitutionally discriminated against as a "class of one" when the Town provided the residents of McDonald's house, but not them, with bottled water and a temporary water line, and when it required them, but not McDonald, to pay for repairing the leak in the service pipe. The Town argues that plaintiffs' equal-protection claim must be dismissed because plaintiffs have not adequately alleged that they and McDonald were similarly situated. Plaintiffs contend

that they and McDonald are similarly situated in all relevant respects.

The Fourteenth Amendment to the United States Constitution provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

> The Equal Protection Clause is usually deployed in cases involving state or local curtailment of personal constitutional rights (e.g., against racial discrimination) and ordinarily against generic distinctions made in statutes or regulations. But economic interests can also be protected, although more latitude is allowed to the government; and individual inequalities, as opposed to ones imposed generically, are potentially – although not easily – reached by so-called "class of one" discrimination claims. E.g., Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam); Wojcik v. Mass. State Lottery Comm'n, 300 F.3d 92, 104-05 (1st Cir. 2002).

Rectrix Aerodrome Ctrs., Inc. v. Barnstable Mun. Airport Comm'n, 610 F.3d 8, 15 (1st Cir. 2010) (parallel citations omitted). "A claim for a class of one equal protection violation is cognizable when – and only when – a plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." SBT Holdings, LLC v. Town of Westminster, 547 F.3d 28, 34 (1st Cir. 2008) (quoting Cordi-Allen v. Conlon, 494 F.3d 245, 250 (1st Cir. 2007)) (internal quotation marks omitted).

7

"[T]he burden [is] on the plaintiff in [a] class-of-one case[ ] to show . . . identity of entities and circumstances to a high degree." Rectrix, 610 F.3d at 16. More specifically:

> "The test is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated. Much as in the lawyer's art of distinguishing cases, the 'relevant aspects' are those factual elements which determine whether reasoned analogy supports, or demands, a like result. Exact correlation is neither likely nor necessary, but the cases must be fair congeners. In other words, apples should be compared to apples." Dartmouth Review v. Dartmouth Coll., 889 F.2d 13, 19 (1st Cir. 1989) (citation omitted); see also Rodriguez-Cuervos v. Wal-Mart Stores, Inc., 181 F.3d 15, 21 (1st Cir. 1999).

Barrington Cove Ltd. P'ship v. R.I. Hous. & Mortg. Fin. Corp., 246 F.3d 1, 8 (1st Cir. 2001). In other words, "[t]o carry the burden of proving substantial similarity, 'plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves.'" Cordi-Allen, 494 F.3d at 251 (quoting Clubside, Inc. v. Valentin, 468 F.3d 144, 159 (1st Cir. 2006)).

The Town argues that the plaintiffs have failed to allege facts establishing that they and McDonald were similarly situated with regard to responsibility for maintaining the shared service pipe, which is the "relevant aspect" for determining similarity or a lack thereof under the circumstances of this case. In their writ, plaintiffs alleged the following:

> The house [plaintiffs own and occupy] was previously
> owned and occupied by Henry Elliott, and Mr. Elliott's
> son built a house across the street where Ms. McDonald
> resides. Because of their relationship, the homes had
> a connecting water line. Defendant asserted that the
> Plaintiffs were responsible for any problems with
> several hundred feet of the line because the previous
> owner allegedly had been. It appears that the
> Elliotts were informed that they were responsible for
> problems with lines between the houses.[3] Prior to the
> leak, Plaintiffs were never informed of any
> responsibility for water lines.

Doc. no. 1-5, at 4-5. The writ also makes several oblique references to responsibility for service-pipe repairs, alleging, for example, that "[p]laintiffs were also without means to effectuate any repairs without obtaining a loan, <u>even if they were the responsible parties</u>." Id. at 5 (emphasis added). A subsequent paragraph of the writ states:

> Eventually, the Plaintiff's [sic] were able to
> borrow money to fix the water line, having been made
> to pay for 1/2 of the water line repair, <u>which they
> assert was primarily Defendant's responsibility</u>. In
> fact, the Defendant only agreed to pay half if
> Plaintiffs allowed Ms. McDonald to continue to be
> hooked on to their line. In effect, <u>Defendant paid
> for Ms. McDonald's portion</u>. Ms. McDonald was not made
> to pay for any repairs. Plaintiffs had no choice but
> to agree to pay for repairs <u>for which they did not
> believe they were responsible</u>, in order to have their
> water turned back on.

Id. at 6 (emphasis added).

---

[3] It is impossible to tell whether "the Elliotts" plaintiffs refer to are: (1) Henry Elliott and a wife who were plaintiffs' predecessors in title; or (2) Henry Elliott and his son, who were the predecessors in title of plaintiffs and McDonald, respectively.

As with several other aspects of the writ, plaintiffs' framing of the issue of responsibility is imprecise, at best.[4] Moreover, plaintiffs appear to conflate two separate aspects of responsibility by mentioning, without much differentiation, the Town's responsibility for repairing the leak and McDonald's portion of the costs. Plainly, however, there are two separate issues: (1) whether and to what extent the Town is liable for repairing the leak as opposed to a customer or customers being responsible; and (2) whether McDonald has any responsibility for repairing the leak, in the event that repairing the leak is a customer responsibility rather than a Town responsibility.

Assuming that reparaing the leak was, indeed, a customer responsibility rather than a Town responsibility, plaintiffs

---

[4] Another significant area of imprecision concerns the location of the leak. The writ generally describes a single service pipe that, at some point, includes a split of some sort that allows water to flow to both plaintiffs' house and McDonald's house. The writ then refers to "a water leak in the pipe servicing Plaintiff's [sic] home." Doc. no. 1-5, at 5. That phrase could reasonably be read as referring to the entire run of the service pipe from the main to plaintiffs' house. But that phrase could also be read, reasonably, as referring to just the portion of the service pipe running from the split to plaintiffs' house. Whether the leak was located between the main and the split, or between the split and plaintiffs' house could, potentially, have a substantial bearing on whether plaintiffs and McDonald are similarly situated, but the writ simply does not indicate the precise location of the leak. Similarly, the writ mentions a shared water line, id., without indicating what water line is shared. The shared water line could be the part of the service pipe running from the main to the split, the part of the service pipe that connects the two houses, or the entire set of service pipes running from the main to both houses.

have failed to allege facts which, if proven, would establish that they and McDonald were similarly situated with regard to their relative responsibilities for maintaining the service pipe. See Rectrix, 610 F.3d at 16 (placing burden on plaintiffs to establish substantial similarity); Cordi-Allen, 494 F.3d at 251 (same). With regard to similarity, plaintiffs only allege that they used the same service pipe as McDonald. But, the relevant issue is not whether plaintiffs and McDonald shared a service pipe; the issue is whether they also shared responsibility for maintaining the service pipe. And on that issue, plaintiffs allege no facts at all. In their objection to the Town's motion to dismiss, plaintiffs point only to the fact that they shared the service pipe with McDonald.[5] See doc. 7-1, at 11.

Beyond that, they make what appears to be an attempt to shift the burden to the Town to prove dissimilarity: "In the case at bar, the Plaintiffs and McDonalds are similar in all relevant respects. The Town's claim that Plaintiffs were responsible for the repair is without factual basis at this time

---

[5] Actually, they seem to suggest – albeit without the support of factual allegation in their writ – that McDonald might not even be a customer of the Wolfeboro Water Department. See doc. no. 7-1, at 8-9. Given that the relevant factual issue in this case is customer responsibility for maintaining the service pipe, if McDonald is not a customer, that would seem to cut against a determination that she and plaintiffs are similarly situated, given that plaintiffs appear to allege that they are customers.

11

and is denied by Plaintiffs." Id. at 8. That bald assertion in a pleading, however, is no substitute for a factual allegation in the writ. Because plaintiffs have alleged no facts which, if proven, would establish that they and McDonald were similarly situated with regard to responsibility for maintaining the portion of the service pipe that sprung a leak, the Town is entitled to dismissal of plaintiffs' federal equal-protection claim.

B. Count II

Count II is plaintiffs' claim under 42 U.S.C. § 1983. The full text of Count II is as follows:

> 18. Plaintiffs incorporate herein each and every allegation elsewhere in this Complaint, as if fully set forth herein, and further state as follows:
>
> 19. Defendant's actions, as described herein, were in violation of Plaintiffs' rights, as protected by 42 U.S.C. Section 1983.
>
> 20. As a result of Defendant's actions, Plaintiffs have been damaged and claim all damages as allowed by law.

Doc. no. 1-5, at 7-8.

The Town argues that Count II must be dismissed because: (1) plaintiffs do not identify any underlying federal constitutional right they seek to vindicate by means of § 1983; and (2) plaintiffs have not even recited the requisite elements to hold a municipality liable under § 1983. There is no need to

12

belabor the point; plaintiffs have not stated a claim under § 1983. Section 1983 provides a right of action against any

> person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.

To state the obvious, in an action under § 1983, a "plaintiff must show a deprivation of a federally secured right." Harrington v. City of Nashua, 610 F.3d 24, 28 (1st Cir. 2010) (citing Farrar v. Hobby, 506 U.S. 103, 112 (1992)). Before showing such a deprivation, of course, the deprivation must be alleged. Count II identifies no federally secured right. The only such right that may be read into that count, even under the most plaintiff-friendly construction of the writ, is the right to equal-protection on which Count I was based.[6] It is not clear why plaintiffs would allege a constitutional claim in Count I, and then attempt to bring the same claim by means of § 1983 in

---

[6] Plaintiffs' objection to the Town's motion to dismiss appears to characterize Count II as asserting a § 1983 claim based upon deprivation of a property interest, which would implicate plaintiffs' federal constitutional right to procedural due process. But, there is nothing in the writ that comes anywhere close to describing or stating a due-process claim, and when ruling on a motion to dismiss, the court must focus on what is alleged and asserted in the writ. See Sutliffe, 584 F.3d at 325; Fantini, 557 F.3d at 26.

Count II, but there is no way of reading their complaint as operating in any other way. Accordingly, because the Town is entitled to dismissal of the federal equal-protection claim asserted in Count I, it is also entitled to dismissal of Count II.

C. Counts III & IV

Counts III and IV are state-law claims for intentional and negligent infliction of emotional distress. In the absence of any surviving federal claim, the court declines to exercise supplemental jurisdiction over the state-law claims asserted in Counts III and IV. See McInnis-Misenor v. Med. Md. Ctr., 319 F.3d 63, 74 (1st Cir. 2003) (citing Camelio v. Am. Fed'n, 137 F.3d 666, 672 (1st Cir. 1998)); 28 U.S.C. § 1367(c)(3).

## Conclusion

For the reasons given, the Town's motion to dismiss Counts I and II, doc. no. 5, is granted with regard to plaintiffs' federal constitutional claims, and the court declines to exercise supplemental jurisdiction over the state-law claims asserted in Counts I, III and IV. Thus, this case is remanded to the Carroll County Superior Court for resolution of the state

constitutional claim in Count I, along with Counts III and IV. See 28 U.S.C. 1447(c).

**SO ORDERED.**

_____
Landya B. McCafferty
United States Magistrate Judge

Date: February 11, 2011

cc: Leslie H. Johnson, Esq.
    Garry R. Lane, Esq.
    Lisa lee, Esq.
    Mark H. Puffer, Esq.